UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATTY REYES,<br><br>　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　Defendant. | Case No. 1:17-cv-0340-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

**I.　INTRODUCTION**

Plaintiff Patty Reyes ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe. Having carefully considered the parties' briefs as well as the entire record in this case, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

**II.　BACKGROUND**

Plaintiff applied for benefits on December 18, 2012, alleging disability beginning June 2, 2012, due to mental impairments. AR 167-175, 192. Her application was denied initially and on reconsideration. AR 106-110. On May 11, 2015, a hearing was held before Administrative Law Judge ("ALJ") Christine Hilleren. Plaintiff appeared and testified along with her attorney. AR 40-72. The ALJ also heard testimony from an independent vocational expert ("VE"). AR 69.

Using the Social Security Administration's five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 2, 2012, the alleged onset date. AR 27. The ALJ identified: major depressive disorder/dysthymic disorder and panic/anxiety with agoraphobia as severe impairments. AR 27. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or medically equal the severity of any of the listed impairments. AR 28.

Based on her review of the entire record, the ALJ found that Plaintiff had the following residual functional capacity (RFC):

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: She is limited to performing simple, routine tasks commensurate with an SVP level of two or less in a work environment with no more than occasional changes in routine, and is limited to occasional interaction with co-workers and no interaction with the general public.

AR 29.

Applying this RFC, the ALJ found that Plaintiff could not return to her past relevant work as a program aide group worker, but determined that based on her age (53 years old), college education, and RFC, there were jobs existing in significant numbers in the national economy that she could perform. AR 33.

### III. LEGAL STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

### IV. DISCUSSION

Plaintiff contends the ALJ erred in (1) evaluating her treating psychiatrist Matthew House, D.O.'s opinion; (2) evaluating her subjective symptom testimony; and (3) presenting an incomplete hypothetical to the vocational expert. (Doc. 14).

2

**1. The ALJ Provided Specific and Legitimate Reasons for Discounting Dr. House's Opinion**

In her first issue, Plaintiff argues that the ALJ erred in affording only little weight to the opinion of her treating psychiatrist Matthew B. House, D.O.

**A. Legal Standard**

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. §§ 404.1527(b), 416.927(b). In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

**B. Dr. House's Opinion**

Plaintiff began treating with Dr. House on December 3, 2012. AR 406. On December 19,

2012, Plaintiff complained to Dr. House about withdrawal symptoms she had been experiencing since tapering off the anti-depressant Effexor XR due to cost. AR 309. Plaintiff saw her counselor again on the same day and she reported an increased level of anxiety, irritability, trouble staying asleep, and loss of appetite. AR 308. She continued to be tearful. AR 308. On December 27, 2012, Plaintiff treated with Dr. House and he noted that she was doing better now that she was back on Effexor, but she was still depressed. AR 306. Her mood and affect were sad and depressed, her speech was low volume, and her thoughts were slowed. AR 306.

On February 4, 2013, Dr. House noted that Plaintiff was "still doing poorly. Panic attacks, depression and agoraphobia." AR 303. She denied any suicidal ideation and had "good sleep" with medication, with no side effects. AR 303. Dr. House stated that her "thoughts seem [at the] right speed," but also that she had a "[s]lowed rate of thought." AR 303. Plaintiff's thought process was logical and linear, with no evidence of hallucinations or delusions, and she demonstrated good judgment. AR 303. Plaintiff was low energy and her psychomotor was slowed. AR 303. At this appointment Dr. House increased Plaintiff's Effexor dosage to 75 mg and advised her to return to the clinic in two months or earlier, if needed. AR 303-04. AR 303.

On March 14, 2013, Dr. House provided a letter stating that Plaintiff was being seen for Major Depressive Disorder, Recurrent, Severe; Agoraphobia with panic disorder; and Dysthymic Disorder. AR 301. Dr. House stated that Plaintiff's symptoms significantly interfered with her ability to engage in the mental activities required in a work environment. AR 301. When Dr. House examined Plaintiff four days later, he found her thought process logical and linear, and that she demonstrated good judgment, was fully oriented, had intact recent and remote memory, intact concentration with "[n]o evidence of any difficulties," and intact language. AR 327.

In assessing Dr. House's opinion, the ALJ reasoned as follows:

> Mathew House, D.O. wrote a letter dated March 2013. Therein, he indicated diagnoses of depressive disorder, agoraphobia with panic disorder, and dysthymic disorder. Dr. House opined that claimant's symptoms significantly interfered with her ability to engage in the mental activities required in a work environment. This opinion is given little weight, as no specific functional restrictions are noted and it seems to only establish the claimant's mental impairments as "severe."
>
> Dr. House also completed a mental capacity assessment dated August 2013.

4

> Therein, he indicated the claimant had a marked restriction in understanding and memory, along with a moderate restriction in her abilities to carry out very short and simple instructions and maintain attention and concentration for extended periods. He further opined the claimant had a marked restriction in her abilities to carry out detailed instructions and sustain an ordinary routine without special supervision, with an extreme limitation in her abilities to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. Dr. House opined the claimant had an extreme limitation in all areas of sustained concentration and persistence, except that she was markedly limited in her ability to make simple work-related decisions. He indicated the claimant had extreme limitations in all areas of social functioning and mostly marked restrictions in the area of adaption. I also give this medical source statement little weight. It is a check box form and does not provide any specific restrictions. It also does not provide a sufficient explanation of such an extreme level of restriction, and the justification provided is not consistent with the [Plaintiff]'s own testimony and reports, as she is able to go out alone, grocery shop, drive, and attend appointments. Finally, I note that in a narrative portion of this medical source statement, Dr. House lists common features of the claimant's diagnoses and does not indicate any specific features applicable to the claimant's functioning.

AR 32.

The ALJ's conclusion that Dr. House's opinion was entitled to little weight because it was inconsistent with the treatment notes, mental status examinations, and Plaintiff's own testimony is supported by substantial evidence in the record. First, the ALJ discounted Dr. House's opinion because he did not provide an explanation to support the extreme limitations indicated on the form. Indeed, other than noting some "common features" of depression and agoraphobia, Dr. House failed to identify a single clinical finding to support the asserted limitations. AR 31- 32, 403-05. Dr. House's opinion was provided in a "check-the-box" form and he did not provide any clarification of his reasons for checking the various boxes he did. The notes do not explain any of the numerous areas in which Dr. House opined Plaintiff had extreme or marked limitation. For example, Dr. House opined that Plaintiff was extremely limited in her ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, but there is nothing in his treatment notes to support this conclusion. AR 403. He also opined that she was extremely limited in her ability to ask simple questions or request assistance. AR 404. There is nothing in his notes regarding her ability to ask simple questions or request assistance. Dr. House does not give any explanation to support his opinion. Hence, it is not supported by his treatment

5

notes, and it is brief, conclusory and unsupported by sufficient clinical findings.

Second, as further expressed by the ALJ, Dr. House's assessed limitations were in direct conflict with Plaintiff's own admitted capabilities. The ALJ noted that Plaintiff testified that she could go out alone, grocery shop, drive and attend appointments. AR 32. Plaintiff also stated that she paid bills, used a checkbook, sewed and made crafts, gardened with her family, spoke to her children and friends over the phone, and babysat her grandchildren. AR 28, 61-65, 201, 230, 325, 389. In addition, Plaintiff travelled during the relevant period, including a month-long trip to France and a trip to the East Coast where she helped her daughter-in-law move back to California. AR 28, 31, 66-67, 316-17, 339, 342. Those activities stand in stark contrast to Dr. House's findings that Plaintiff had "extreme" limitations in social functioning including "acting appropriately with the general public," "getting along with coworkers or peers without distracting them or exhibiting behavioral extremes," and "accepting instructions and responding appropriately to criticism." AR 404. The ALJ thoroughly reviewed Dr. House's opinion, in light of the testimony of Plaintiff, and found that the opinion unjustifiably assigned extreme limitations, which were not supported by the record. This was a specific and legitimate reason to reject Dr. House's opinion.

As another reason, the ALJ found that Dr. House's opinion was inconsistent with his own treatment notes. An ALJ properly may discount a physician's opinion that is unsupported by the record or by objective medical findings. *See Batson v. Comm'r Soc. Sec. Admin*, 359 F.3d 1190, 1195 (9th Cir. 2004). Plaintiff began treating with Dr. House roughly eight months before he completed his mental capacity assessment. During that time, Dr. House's own examination findings found Plaintiff's thought process to be logical and linear, she demonstrated good judgment, was fully oriented, had intact recent and remote memory, intact concentration with "[n]o evidence of any difficulties," and intact language. AR 327. These notes are inconsistent with Dr. House's opinion that Plaintiff is markedly to extremely limited in her ability to "understand and remember very short and simple instructions" and "work in coordination with or in proximity to others without being a distracted by them." AR 403-404. Dr. House's treatment notes also indicate that Plaintiff presented at her appointments "well dressed [and] well groomed," with "good and appropriate hygiene." AR 324, 325. Yet, Dr. House opined that Plaintiff is "extremely" limited "with no useful

ability to function" in the area of "adhering to basic standards of neatness and cleanliness." AR 404. Inconsistency between an opinion and the underlying treatment notes is a permissible basis for discounting a treating source opinion. 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (ALJ can reject a treating physician's assessment of limitations when the physician's clinical notes and other recorded observations regarding the claimant's capabilities contradict the assessment).

Moreover, while Plaintiff argues that the ALJ's finding that Dr. House's opinion was undermined by her ability to regularly attend appointments penalizes her for seeking treatment, this is not so. (Doc. 20 at 3). Plaintiff's ability to attend weekly counseling sessions and meet with Dr. House monthly provides some further indication that she is not "extremely" impaired in the ability to maintain a schedule and to ask simple questions and request assistance. AR 403-404.

Ultimately, the ALJ assigned greater weight to the opinions of the non-examining state agency physicians, both of whom opined that Plaintiff could complete simple instructions in a limited public contact environment. AR 32, 76, 96. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ may reject treating physician's opinion based on non-treating or non-examining physician's opinions when non-treating or non-examining physician's opinions are consistent with other evidence in the record or when the treating physician's opinion is inadequately supported by clinical findings). Reasonable minds could accept the evidence outlined by the ALJ as adequate to support her ultimate decision to give Dr. House's opinion little weight. Hence, the ALJ's discrediting Dr. House's opinion because it was inconsistent with the treatment notes and Plaintiff's reported activities is without legal error and supported by substantial evidence in the record.

**2. Whether the ALJ Properly Evaluated Plaintiff's Credibility**

In her next issue, Plaintiff argues that because the ALJ "failed to provide any meaningful analysis of [her] credibility" the ALJ's ultimate credibility determination is without support. Plaintiff takes additional issue with the ALJ's statement that "her current exacerbation [of depressive symptoms] appears to be due to her husband's terminal illness and her economic

7

struggles." AR 30. Plaintiff argues that it was improper for the ALJ to speculate on the causes of her depression. (Doc. 14 at 15-16).

To evaluate the credibility of a claimant's testimony regarding subjective complaints of pain and other symptoms, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that the impairment "could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Id.* (emphasis added). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of the symptoms for "specific, clear and convincing reasons" that are supported by substantial evidence. *Id.*

An ALJ can consider a variety of factors in assessing a claimant's credibility, including:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted).

Other factors can include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Light v. SSA*, 119 F.3d 789, 792 (9th Cir. 1997). An ALJ can only rely on an inconsistency between a claimant's testimony and the objective medical evidence to reject that testimony where the ALJ specifies which "complaints are contradicted by what clinical observations." *Regennitter v. Commissioner of SSA*, 166 F.3d 1294, 1297 (9th Cir. 1999). An ALJ properly discounts credibility if she makes specific credibility findings that are properly supported by the record and sufficiently specific to ensure a reviewing court that she did not "arbitrarily discredit" the testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991).

In arguing that the ALJ failed to provide "any meaningful analysis of [her] credibility,"

Plaintiff fails to account for the ALJ's statements regarding her improvement with medication. An ALJ may properly rely on the fact that medication is helpful to discount a claimant's credibility. *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may properly rely upon weak objective support, lack of treatment, daily activities inconsistent with total disability, and helpful medication). In finding that the limiting effects of her symptoms are not entirely credible, the ALJ noted that "[Plaintiff's] medications were adjusted throughout the period at issue, resulting in good sleep, stable mood, and normal thoughts and speech. [Plaintiff's] symptoms improved further on Effexor medication, and she reported that this medication worked better than any others she had taken." AR 31. The ALJ referred to medical records in which Plaintiff reported an improvement in her symptoms with the use of medications. AR 31, 305-306. She had a decrease in anxiety, irritability, no trouble staying asleep, and no loss of appetite since being back on medication." AR 305. The ALJ was entitled to reasonably conclude that Plaintiff's improvement discredited her subjective complaints. *See Morgan v. Apfel*, 169 F.3d 595, 599 (9th Cir. 1999) (ALJ properly discredited the claimant's subjective complaints by citing physician's report that mental symptoms improved with medication).

In further weighing Plaintiff's credibility, the ALJ also noted inconsistencies between Plaintiff's reported daily activities and her contention of total disability. AR 30. *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ may consider whether the claimant's daily activities are inconsistent with the alleged symptoms) (citations omitted). Plaintiff reported that she cooked, vacuumed, dusted, washed dishes, and watered her plants. AR 28. She spoke with friends and family over the phone, babysat her grandchildren, drove, grocery shopped, attended appointments and therapy, and travelled across the country and abroad for a month. AR 28. *See Burch*, 400 F.3d at 680–81 (Claimant's ability to care for her own personal needs, cook, clean, shop, manage her finances, and interact with her nephew and boyfriend suggested she was quite functional); *Thomas*, 278 F.3d at 958–59 (holding that the ALJ's finding that claimant could perform various household chores such as cooking, laundry, washing dishes, and shopping constituted a specific, clear and convincing reason, among others, for discounting claimant's testimony). Everyday activities may be grounds for discrediting a claimant's testimony "to the

9

extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112. The ALJ appropriately considered Plaintiff's admitted activities of daily living, which included daily care, daily activities, and interaction with others. Plaintiff testified to performing such a variety of activities, and doing so with a frequency and to such an extent, that it was inconsistent with Plaintiff's claims of total disability.

Finally, the ALJ did not offer his lay opinion as to the cause of Plaintiff's depression, but rather addressed Plaintiff's testimony that her symptoms were exacerbated by her husband's illness and her economic struggles. AR 56-58. Nevertheless, despite the ALJ's attempts to empathize with Plaintiff's present difficulties, the ALJ provided valid reasons supported by substantial evidence for finding Plaintiff not entirely reliable as discussed above. *See Valentine v. Astrue*, 574 F.3d 685, 692 (9th Cir. 2009) (even if one or more credibility factors are invalid, as long as the remainder of the ALJ's credibility analysis is valid, remand not warranted).

### 3. The ALJ Propounded a Complete Hypothetical

In her last argument, Plaintiff argues that the ALJ erred in propounding a complete hypothetical to the vocational expert ("VE"). (Doc. 14 at 17-19). Plaintiff contends that despite finding that she suffers from moderate difficulties in concentration, persistence or pace, the ALJ failed to include that limitation in her hypothetical to the vocational expert.

Relying on *Brink* and *Lubin*, Plaintiff contends that the ALJ's limitation to "simple, routine tasks" does not adequately encompass her moderate difficulties with concentration, persistence, or pace." (Doc. 14 at 17-19) (*citing Brink v. Comm'r Soc. Sec. Admin.*, 343 F. App'x 211, 212 (9th Cir. 2009) (finding that "the ALJ's initial hypothetical question to the vocational expert referenc[ing] only 'simple, repetitive work,' without including limitations on concentration, persistence or pace . . . was error"); *see also Lubin v. Comm'r of Soc. Sec. Admin.*, 507 F. App'x 709, 712 (9th Cir. 2013) ("Although the ALJ found that Lubin suffered moderate difficulties in maintaining concentration, persistence, or pace, the ALJ erred by not including this limitation in the residual functional capacity determination or in the hypothetical question to the vocational expert.").

However, this court and others have concluded that *Brink* and *Lubin*, both unpublished

10

cases, do not necessarily establish error in the ALJ's hypothetical question here. *See Rutherford v. Berryhill*, No. 17-cv-1361-JM (RNB), 2018 U.S. Dist. LEXIS 128356 (S.D. Cal. July 31, 2018); *Gann v. Berryhill*, 1:17-CV-00325-SKO, 2018 WL 2441581 (E.D. Cal. May 31, 2018); *Nicholl v. Berryhill*, SACV 17-1485 SS, 2018 WL 3702296 (C.D. Cal. Aug. 2, 2018). Further, an earlier published Ninth Circuit decision has arguably held otherwise. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (finding that RFC limiting a claimant to simple, repetitive work "adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with the restrictions identified in the medical testimony"); *accord Miller v. Colvin*, No. CV 15-7388, 2016 U.S. Dist. LEXIS 98998, 2016 WL 4059636, at *2 (C.D. Cal. July 28, 2016) ("ALJ may translate moderate limitations into a limitation to simple repetitive tasks based on record").

Nevertheless, even if the Ninth Circuit precedent were to require that limitations in concentration, persistence, or pace be explicitly included in the hypothetical question to the VE, the error here would be harmless. The ALJ acknowledged that Plaintiff has moderate restrictions in concentration, persistence, or pace and the ALJ's questions to the VE reflected those limitations. AR 28-29. The ALJ's hypothetical question to the VE restricted Plaintiff to "simple, routine tasks commensurate with an SVP Level of 2 or less in a work environment with no more that occasional changes in routine, and this individual is limited to occasional interaction with coworkers and no interaction with the general public. AR 70. In response, the VE identified jobs that were limited to those requiring only Level 2 reasoning. AR 70 (identifying bagger, DOT 920.687-014, and package sealer machine operator, DOT 920.685-074, and laundry checker, DOT 369.687-014 as jobs that exist in sufficient numbers in the national economy that someone with Plaintiff's RFC could perform); *see <http://www.govtusa.com/dot >* (jobs classified with DOT numbers 920.687-014, 920.685-074 and 369.687-014 involve Level 2 reasoning) (last visited August 30, 2018).

Jobs with Level 2 reasoning adequately encompass moderate difficulties in concentration, persistence, or pace, such as Plaintiff's. *Turner v. Berryhill*, 705 F. App'x 495, 498-99 (9th Cir. 2017) ("The RFC determination limiting Turner to 'simple, repetitive tasks,' which adequately encompasses Turner's moderate difficulties in concentration, persistence, or pace, is compatible

with jobs requiring Level 2 reasoning."); *cf. Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015) (finding "an inherent inconsistency between [the claimant's] limitation to simple, routine tasks, and the requirements of Level 3 Reasoning"); *Nicholls*, 2018 WL 3702296 at *15.

In this case, the ALJ properly accounted for Plaintiff's limitations in concentration, persistence, and pace by limiting her to simple, routine tasks commensurate with an SVP Level of 2. *See Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1173–74 (9th Cir. 2008); s*ee also Kehm v. Berryhill*, No. 2:16–cv–01918 AC, 2018 WL 1392887, at *6 (E.D. Cal. Mar. 20, 2018) ("To the extent plaintiff argues that the ALJ's hypothetical to the VE was incomplete because it did not specifically include a limitation on concentration, persistence, or pace, such an argument is inconsistent with the rule in the Ninth Circuit."); *Allain v. Astrue*, No. CV 09–00810–MLG, 2009 WL 3514424, at *2 (C.D. Cal. Oct. 27, 2009) (holding that the ALJ properly translated moderate difficulties in concentration, persistence, or pace at Step Three into questions to the VE by limiting the claimant to work involving "simple, routine tasks"). Because the ALJ's hypothetical question incorporated all of Plaintiff's limitations, no remand is required.

## V. CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of the Commissioner of Social Security, and against Plaintiff Patty Reyes.

IT IS SO ORDERED.

Dated: **August 31, 2018**     /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE